[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14414
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cr-20018-KMM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

REGINALD DELANEY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(January 22, 2016)

Before TJOFLAT, ROSENBAUM, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Reginald Delaney appeals his sentence of 188 months of imprisonment, imposed after he pled guilty to conspiracy to import at least 500 grams of cocaine, in violation of 21 U.S.C. § 952(a).  According to the factual proffer in Delaney's plea agreement, Delaney and a co-defendant traveled to Colombia, purchased cocaine, and then shipped it back to the United States.  On appeal, Delaney challenges his sentence on three grounds:  (1) the district court erred in sentencing him as a career offender, under United States Sentencing Guidelines Manual ("U.S.S.G.") § 4B1.1(a); (2) the court erred in denying him a minor-role reduction under U.S.S.G. § 3B1.2(b); and (3) his sentence is unreasonable because the court failed to meaningfully consider the § 3553(a) factors or adequately explain its sentence.  After careful review, we affirm Delaney's sentence.

## I.

Delaney first challenges his designation as a career offender under the Sentencing Guidelines.  He challenges this designation on three grounds:  (1) his South Carolina conviction for second-degree lynching did not qualify as a crime of violence; (2) the record is unclear which prior convictions the district court used to qualify him as a career offender, so remand is warranted; and (3) his prior convictions do not count as separate predicate offenses because he was sentenced for these offenses on the same day.

2

We review *de novo* whether a prior conviction qualifies as a predicate offense under the career-offender guideline. *United States v. Chitwood*, 676 F.3d 971, 975 (11th Cir. 2012). We may affirm a district court's sentencing decision for any reason supported by the record, even if the reason was not relied upon by the district court. *Id.*

A "career offender" is subject to increased penalties under the Sentencing Guidelines. Generally, career-offender status increases both a defendant's base offense level—Delaney's base offense level rose from 26 to 34—and his criminal-history category, which becomes the highest category (VI) in every case. U.S.S.G. § 4B1.1(b)(2). With the career-offender enhancement, and after a reduction for acceptance of responsibility, Delaney's total offense level was 31, and his advisory guideline sentencing range was 188 to 235 months of imprisonment.

A defendant is a career offender under § 4B1.1 if (1) he was at least eighteen when he committed the instant offense, (2) the instant offense is a felony crime of violence or controlled substance offense; and (3) he has "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). Only the third requirement is at issue in this case.

The term "crime of violence" includes an offense that "has as an element, the use, attempted use, or threatened use of physical force against the person of another." *Id.* § 4B1.2(a). A "controlled substance offense" means an offense "that

prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance with intent to manufacture, import, export, distribute, or dispense." *Id.* § 4B1.2(b).

At sentencing, the government relied on three prior convictions to prove Delaney's status as a career offender: two convictions for possession with intent to distribute crack cocaine, in violation of S.C. Code Ann. § 44–53–375(B)(1); and one conviction for second-degree lynching, in violation of S.C. Code Ann. § 16–3–220 (2003) (repealed 2010). Delaney objected to one of the crack-cocaine convictions because, he argued, it was actually a misdemeanor offense based on the small quantity of crack he possessed. As for the other crack-cocaine conviction, Delaney did not contest its status as a predicate offense, but instead lodged a "record objection" that the government had not introduced a certified copy of the judgment. Nonetheless, after the government introduced a non-certified judgment, Delaney's counsel submitted to the court a certified version. Regarding the lynching conviction, Delaney contended that the offense did not qualify as a crime of violence because the state-court judgment reflected that the offense was "non-violent." The district court ultimately concluded that Delaney had at least two predicate convictions for purposes of the career-offender guideline.

4

We first address Delaney's contention that his second-degree lynching conviction does not qualify as a crime of violence.  The first step in determining whether a conviction qualifies as a crime of violence under U.S.S.G. § 4B1.2 is to analyze the statute of conviction under the "categorical approach."  *United States v. Estrella*, 758 F.3d 1239, 1244 (11th Cir. 2014).  Under this approach, we look no further than the elements of the offense.  *Id.*  If the statute necessarily requires the government to prove as an element of the offense the use, attempted use, or threatened use of physical force, then the offense categorically qualifies as a crime of violence.  *Id.* at 1244-45.

In a "narrow range of cases," the "modified categorical approach" permits courts to look beyond the words of the statute and rely on a limited set of documents, such as charging papers, jury instructions, or plea agreements, to determine whether an offense qualifies as a crime of violence.  *Id.* at 1245.  The U.S. Supreme Court has now made clear that the modified categorical approach comes into play only when the statute at issue is "divisible"—that is, when it "sets out one or more elements of the offense in the alternative."  *Descamps v. United States*, ___ U.S. ___, ___, 133 S. Ct. 2276, 2281 (2013); *see Estrella*, 758 F.3d at 1245.  For example, a burglary statute criminalizing entry into "boats, cars, and buildings" is divisible in that the offense can be committed in alternative ways—by entry into a boat, car, or building, respectively.  Still, though, the modified

categorical approach is an "elements-based" one, focused on discovering "which statutory phrase, contained within a statute listing several different crimes," was the basis for a prior conviction. *See Descamps*, 133 S. Ct. at 2285 (internal quotation marks omitted).

When Delaney was convicted in 2001, second-degree lynching, a felony, was defined as "[a]ny act of violence inflicted by a mob upon the body of another person and from which death does not result." S.C. Code. Ann. § 16–3–220 (2003) (repealed 2010); *State v. Smith*, 572 S.E.2d 473, 475 (S.C. Ct. App. 2002). The government contends that the offense categorically qualifies as a crime of violence because the statute has as an element of the offense the use of physical force (an "act of violence") against the person of another ("upon the body of another person"). *See* U.S.S.G. § 4B1.2(a); *see also Johnson v. United States,* 559 U.S. 133, 140, 130 S. Ct. 1265, 1271 (2010) ("[T]he phrase 'physical force' means violent force—that is, force capable of causing physical pain or injury to another person."). We agree.

While the South Carolina legislature does not define the term "act of violence," the South Carolina Court of Appeals has indicated that the term is synonymous with an act capable of causing bodily harm. *See State v. Prince*, 517 S.E.2d 229, 232-34 (S.C. Ct. App. 1999) (holding that "act of violence" in an aggravated stalking statute encompasses fear-inducing behavior accompanied by

6

property damage, as well "fear-inducing behavior *accompanied by bodily injury*" (emphasis added)). That the legislature used the term "act of violence" rather than "battery" to describe the proscribed conduct further indicates that physical force capable of causing bodily injury is required.[1] *Cf. Johnson*, 559 U.S. at 139-42, 130 S. Ct. at 1270-72 (holding that a Florida battery statute did not categorically require "physical force" because the statute could be violated with mere "offensive touching"). Accordingly, Delaney's prior conviction for second-degree lynching qualifies as a crime of violence because the statute of conviction categorically required proof of an element involving the use of physical force against the person of another. *See Estrella*, 758 F.3d at 1244-45; U.S.S.G. § 4B1.2(a).

Delaney does not dispute that he was convicted of § 16–3–220 or that the offense had as an element the use of physical force against another. Instead, he argues that we should apply the modified categorical approach and look to the state-court judgment, which states that the offense was "non-violent." However, the modified categorical approach is inapplicable in this case because the second-degree-lynching statute is not divisible. *See Estrella*, 758 F.3d at 1245. It does not set out one or more elements of the offense in the alternative. Therefore, the

---

[1] This conclusion is also supported by subsequent actions of the South Carolina legislature. In 2010, the crime of second-degree lynching was repealed and replaced by the crime of "assault and battery by mob." *See* S.C. Code Ann. § 16–3–210. Regardless of the degree of offense, the crime of assault and battery by mob requires that the "act of violence . . . results in" bodily injury to the person. *Id.* § 16–3–210(B)-(D).

district court properly did not rely on the state-court judgment's designation of the crime as "non-violent."

In any case, we are not bound by the label a state attaches to an offense or even by how the state treats the offense for state sentencing purposes under an analogous sentencing scheme. *See Estrella*, 758 F.3d at 1249 n.4. While we are bound by state-court opinions regarding the elements of a criminal offense, whether those elements create a crime of violence under the federal Sentencing Guidelines is a question of federal law. *Id.* Here, the state court's designation of the offense as "non-violent," apparently for state sentencing purposes, does not determine whether the offense's elements create a crime of violence under the federal Sentencing Guidelines. Moreover, the judgment still reflects that Delaney was convicted of § 16–3–220, and Delaney does not assert that the statute— whatever the judgment may say—sets out an alternative, non-violent way to commit the offense. Thus, the state-court judgment does not change our conclusion that Delaney's prior conviction for second-degree lynching qualified as a crime of violence.

Delaney next claims that it is unclear which convictions the court ultimately relied upon and that this ambiguity requires resentencing. We disagree. The government proffered three convictions at sentencing to show that Delaney was a career offender, and the district court, after hearing Delaney's objections, stated

that it was "satisfied with the two." We know that one of the convictions the court relied upon was the lynching conviction, because the court ruled it a crime of violence. That leaves the two crack-cocaine convictions. One was vigorously challenged by Delaney's counsel, and the court did not issue a ruling as to that conviction. As for the other, Delaney's only objection was that the government had not introduced a certified copy of the judgment, but Delaney's counsel effectively resolved that objection by introducing a certified copy after the government entered a non-certified version.[2] Accordingly, we can reasonably infer that the court relied on the lynching conviction and the crack-cocaine conviction as to which there was, in counsel's words, only a "record objection."[3] And because Delaney has presented no argument that this latter crack-cocaine conviction does not qualify as a controlled substance offense, he has abandoned any argument that

[2] We note that a certified copy of a conviction is not required for a sentencing court to make a proper finding that such conviction in fact exists, even if it may be "the best approach." *United States v. Wilson*, 183 F.3d 1291, 1301 (11th Cir. 1999).

[3] Delaney did not object at sentencing that he could not discern on which convictions the district court relied. Had he done so and had the district court refused to identify on which convictions it relied, that would have been error. Title 18, United States Code, Section 3553(c) requires a sentencing court to "state in open court the reasons for its imposition of the particular sentence." Under this provision, a defendant is entitled to know the specific convictions on which an ACCA enhancement is recommended and imposed. To hold otherwise would raise serious due-process concerns. *Cf. Oyler v. Boles*, 368 U.S. 448, 452, 82 S. Ct. 501 (1962) ("[A] defendant must receive reasonable notice and an opportunity to be heard relative to [a] recidivist charge even if due process does not require that notice be given prior to the trial on the substantive offense."); *United States v. Moore*, 208 F.3d 411, 414 (2d Cir. 2000) ("It is settled that due process requires that a defendant have notice and an opportunity to contest the validity or applicability of the prior convictions upon which a statutory sentencing enhancement is based."). But here, Delaney did not object, and, in any case, it is obvious from the record on which convictions the district court relied.

the district court erred on this point.[4]  *See United States v. Jernigan*, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003) (issues not raised on appeal are deemed abandoned).

Delaney also argues that all of the offenses at issue should be treated as a single offense under the Sentencing Guidelines because he was sentenced, pursuant to a negotiated plea deal, to a nine-year aggregate term for these offenses on the same day in January 2001.  For the career-offender provision to apply, the sentences for at least two predicate convictions must be counted separately as a "prior sentence" for purposes of calculating a defendant's criminal-history score. U.S.S.G. §§ 4B1.2(c), 4A1.1(a)–(c).  Sentences are always counted separately if they were imposed for offenses separated by an "intervening arrest."  *Id.* § 4A1.2(a)(2).  "If there is no intervening arrest," prior sentences are counted separately unless the underlying offenses were charged together or "the sentences were imposed on the same day." *Id.*

Here, Delaney's offenses were separated by intervening arrests, which he does not dispute, so the district court properly treated them as separate prior sentences.  *See id.*  Because the sentences were separated by an intervening arrest, it is immaterial that the sentences were imposed on the same day.

---

[4] Even if we did find the record ambiguous, that ambiguity would not require remand because we may affirm the district court's career-offender determinations for any reason supported by the record.  *See Chitwood*, 676 F.3d at 975.

Delaney argues that the "intervening arrest" standard does not apply because the version of the Guidelines Manual in effect when Delaney was convicted in state court in 2001 did not include that language. However, a sentencing court must use the Guidelines Manual in effect on the date the defendant is sentenced, unless application of the Guidelines Manual in effect at sentencing would violate the Constitution's *Ex Post Facto* Clause. U.S.S.G. § 1B1.11; *see Peugh v. United States*, 569 U.S. ___, ___, 133 S. Ct. 2072, 2081 (2013). Delaney makes no claim that the court committed an *ex post facto* violation by using the "intervening arrest" standard. *Cf. United States v. Reynolds*, 215 F.3d 1210, 1213 (11th Cir. 2000) (holding that the use of prior felony predicates to enhance a sentence under the Armed Career Criminal Act, even when the convictions occurred before the effective date of the ACCA, does not violate the *Ex Post Facto* Clause). Nor could he. The crime for which the district court sentenced him occurred in 2013, well after the "intervening arrest" standard of the Guidelines Manual came into effect. As a result, Delaney had the ability to know, when he committed the crime for which he was sentenced in this case, that his prior convictions would be subject to the "intervening arrest" standard.

In sum, we conclude that the district court did not err in sentencing Delaney as a career offender under § 4B1.1.

**II.**

Delaney next argues that he should have been granted a reduction in his offense level for having a minor role in the offense, pursuant to U.S.S.G. § 3B1.2(b).  However, minor-role adjustments under § 3B1.2(b) are not available to defendants sentenced under § 4B1.1, the career-offender guideline.  *United States v. Jeter*, 329 F.3d 1229, 1230 (11th Cir. 2003).  Because Delaney was properly sentenced as a career offender under § 4B1.1, as discussed above, he is ineligible to receive a minor-role adjustment under § 3B1.2(b).

**III.**

Finally, Delaney challenges the reasonableness of his sentence, arguing that the court did not "meaningfully or adequately" consider the 18 U.S.C. § 3553(a) sentencing factors or adequately explain its chosen sentence.  Delaney specifically contends that the court failed to consider mitigating evidence, such as Delaney's alcohol and substance abuse and the age of his prior convictions.

We review the reasonableness of a sentence under a deferential abuse-of-discretion standard.  *United States v. Moran*, 778 F.3d 942, 982 (11th Cir. 2015).  In reviewing for reasonableness, we "must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly

erroneous facts, or failing to adequately explain the chosen sentence." *Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007). In general, the district court's explanation must be sufficient to show that the court "considered the parties' arguments and ha[d] a reasoned basis for exercising [its] own legal decisionmaking authority." *United States v. Ghertler*, 605 F.3d 1256, 1262 (11th Cir. 2010) (internal quotation marks omitted). The court need not specifically discuss each § 3553(a) factor so long as the record reflects that the court considered those factors. *Id.*

Assuming the district court's decision is procedurally sound, we will then review a sentence for substantive reasonableness under the totality of the circumstances. *United States v. Pugh*, 515 F.3d 1179, 1190 (11th Cir. 2008). "A sentence is substantively unreasonable if it does not achieve the purposes of sentencing stated in § 3553(a)[,]" *Moran*, 778 F.3d at 982 (internal quotation marks omitted), which include the need to reflect the seriousness of the offense, deter criminal conduct, and protect the public from the defendant's future criminal conduct, *see* 18 U.S.C. § 3553(a)(2).[5] The party challenging the sentence bears the burden of proving that his sentence is unreasonable. *Moran*, 778 F.3d at 982.

---

[5] The district court must also take into account the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guideline range, any pertinent policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. 18 U.S.C. § 3553(a)(1), (3)-(7).

13

Here, Delaney has not shown that the district court's sentence was procedurally unreasonable. At the sentencing hearing, the court listened to the parties' arguments regarding an appropriate sentence, as well as to Delaney's personal statement to the court, which Delaney highlights in his brief on appeal. Then, in imposing sentencing, the court stated that it had considered the § 3553(a) factors, the statements of the parties, and the PSR. This is sufficient to show that the court adequately considered the § 3553(a) factors. *See United States v. Scott*, 426 F.3d 1324, 1329-30 (11th Cir. 2005) (holding that it is generally sufficient for the court to "explicitly acknowledge[] that it had considered [the defendant's] arguments at sentencing and that it had considered the factors set forth in § 3553(a)"). The district court also adequately explained its sentence. The court specifically discussed the extent of Delaney's criminal history and commented on the seriousness of his prior offenses, and it explained that its low-end sentence was sufficient to deter further recidivism. The court also agreed to recommend him for a drug-treatment program while incarcerated. Overall, the court's explanation was sufficient to show that the court "considered the parties' arguments and ha[d] a reasoned basis" for sentencing Delaney to 188 months of imprisonment. *See Ghertler*, 605 F.3d at 1262; *see also Gall*, 552 U.S. at 51, 128 S. Ct. at 597. Accordingly, Delaney's sentence was procedurally reasonable.

14

Delaney does not argue that his sentence, at the low end of his guideline range, is substantively unreasonable. Therefore, we affirm Delaney's sentence as reasonable.

## IV.

In conclusion, the district court did not err in sentencing Delaney as a career offender under U.S.S.G. § 4B1.1. As a career offender, Delaney was not eligible for a minor-role reduction under U.S.S.G. § 3B1.2(b). Finally, the district court did not procedurally err in sentencing Delaney.

**AFFIRMED.**