# United States Court of Appeals
## For the First Circuit

Nos. 15-1324
     15-1325

UNITED STATES OF AMERICA,

Appellee,

v.

ELVIN TORRES-ESTRADA, a/k/a Munecon,
a/k/a Irvin, a/k/a Irving,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Lynch, Selya, and Lipez,
Circuit Judges.

Ezekiel E. Cortez for appellant.
Thomas F. Klumper, Assistant United States Attorney, Senior
Appellate Counsel, with whom Nelson Pérez-Sosa, Assistant United
States Attorney, Chief, Appellate Division, and Rosa Emilia
Rodríguez-Vélez, United States Attorney, were on brief, for
appellee.

March 25, 2016

LYNCH, **Circuit Judge**. Elvin Torres-Estrada pleaded guilty on March 21, 2011, to two conspiracies. One was a conspiracy to possess with intent to distribute controlled substances within 1,000 feet of public housing, between about 1995 and 2009. That conspiracy was charged on September 28, 2009, with a second superseding indictment filed on April 15, 2010. The second conspiracy was to import five kilograms or more of cocaine and one kilogram or more of heroin from the Dominican Republic, between about March 2005 and July 2009. That conspiracy was charged later, on February 9, 2011.

There is no need for an extensive discussion of facts. We give only a brief overview to explain the context for the issues of law. At the time of the 2009 indictment and 2010 second superseding indictment, Torres-Estrada was a fugitive. On June 7, 2010, Torres-Estrada was arrested and ordered temporarily detained. Attorneys Raymond R. Granger and Edward V. Sapone filed a motion to appear pro hac vice on behalf of Torres-Estrada[1] and represented him at a July 27, 2012, bail hearing along with local counsel Zelma Dávila Carrasquillo. On July 29, 2010, a local Puerto Rico attorney, Ramón García García ("García"), filed a notice to appear as counsel on behalf of Torres-Estrada along with

---

[1] According to Torres-Estrada, in late 2009 and early 2010, while he was a fugitive, he and an alleged co-conspirator met with Granger and Sapone.

Dávila Carrasquillo, Granger, and Sapone. Torres-Estrada says that his counsel did not actually coordinate their representation.

After Granger and Sapone received a plea offer on September 20, 2010, from Assistant United States Attorney Timothy Henwood, plea negotiations ensued with Granger, Sapone, and García representing Torres-Estrada. According to Granger, García interfered with negotiations by, inter alia, making a counteroffer for a sentence lower than what Torres-Estrada had authorized, and communicating with the government without consulting with Granger or Sapone. On October 26, 2010, Granger, Sapone, and Dávila Carrasquillo withdrew from representing Torres-Estrada. Granger and Sapone's motion to withdraw stated that they were "lead counsel" and that "Torres-Estrada has advised us that he no longer wishes to utilize the services of our respective firms and has requested that we move to withdraw as counsel of record."

Plea negotiations over the indictment as to the first conspiracy failed, with negotiations being cut off by the government when it realized Torres-Estrada was involved with the second conspiracy to import drugs from the Dominican Republic. That conspiracy had been charged on February 9, 2011, and it is clear the government cut off negotiations sometime before then. The March 2011 plea agreement, which led to this appeal, covered both conspiracies. Torres-Estrada was sentenced to 288 months of imprisonment for the conspiracy to possess with intent to

distribute various controlled substances, concurrent with a sentence of 120 months of imprisonment imposed for the importation conspiracy.

## I.

Torres-Estrada makes two arguments here on direct appeal. The first is that he is entitled to the benefit of the government's plea offer made in the first round of negotiations, though he had not accepted that offer. In his brief, Torres-Estrada argues that he is the victim of ineffective assistance from García during plea negotiations and that Granger and Sapone had a conflict of interest. Cf. Missouri v. Frye, 132 S. Ct. 1399, 1408 (2012); Lafler v. Cooper, 132 S. Ct. 1376, 1384–85 (2012). The latter part of this argument was modified at oral argument. See infra note 2. The other argument is that the district court judge was required to recuse himself.

### A. Ineffective Assistance of Counsel

Torres-Estrada executed a waiver of appeal as part of his March 21, 2011, plea agreement. The waiver states: "The defendant hereby agrees that if this Honorable Court accepts this agreement and sentences [him] according to its terms and conditions, defendant waives and surrenders [his] right to appeal the conviction and sentence in this case." We find that he has

waived his appeal of the ineffective assistance of counsel ("IAC") claim.[2]

As an initial matter, Torres-Estrada failed to address the waiver of appeal clause in his opening brief, which would ordinarily be enough to enforce that waiver. See United States v. Arroyo-Blas, 783 F.3d 361, 367 (1st Cir. 2015). In his reply brief, Torres-Estrada first implies that he was caught by surprise in learning that the government would attempt to enforce the waiver.[3] That was because as of October 14, 2014, it was the written policy of the Department of Justice ("DOJ") not to enforce waivers of appeal involving IAC claims under certain conditions. The memorandum to which Torres-Estrada refers states, in relevant part, that "[f]or cases in which a defendant's ineffective assistance claim would be barred by a previously executed waiver, prosecutors should decline to enforce the waiver when defense counsel rendered ineffective assistance resulting in prejudice or

---

[2] At oral argument, Torres-Estrada's counsel conceded that he had no claim of an actual conflict of interest against Granger and Sapone. Further, Torres-Estrada develops no argument explaining how a potential conflict could have affected the 2010 plea negotiations, given that Torres-Estrada is seeking the plea offer that Granger and Sapone received and were negotiating prior to their withdrawal. We understand the remaining claim to be an IAC claim against García, but not a conflict of interest claim.

[3] This reminds us of the film Casablanca, where Captain Renault purports to be "shocked, shocked to find that gambling is going on" in Rick's casino.

when the defendant's ineffective assistance claim raises a serious debatable issue that a court should resolve."

The government, in turn, correctly reminds us that such a policy, promulgated after the plea agreement in this case, creates no rights in defendants and that courts typically play no role in the prosecutorial choices made by the DOJ. See, e.g., United States v. Craveiro, 907 F.2d 260, 263-64 (1st Cir. 1990).

Torres-Estrada next points to the district court's statement at sentencing that he could appeal the IAC issue. Torres-Estrada does not argue that he was not fully advised of the waiver of appeal clause when entering his plea. The district court "judge's statement at sentencing," made nearly four years after Torres-Estrada's guilty plea, "does not serve to invalidate [Torres-Estrada]'s earlier waiver." Sotirion v. United States, 617 F.3d 27, 35 (1st Cir. 2010). Interpretation of the waiver of appeal clause is for the court of appeals, and the district court's comments, at least under these circumstances, do not excuse Torres-Estrada from compliance with the agreement he signed. See United States v. Gil-Quezada, 445 F.3d 33, 36-37 (1st Cir. 2006); United States v. Teeter, 257 F.3d 14, 25 (1st Cir. 2001).

Torres-Estrada attempts to use Sotirion to argue that the government waived any argument that the waiver of appeal clause can be enforced, based on the government's failure to respond to the district court's statement at sentencing. We reject the

argument.  In Sotirion, the court's discussion of government waiver related to the government's failure to raise a procedural default defense to a 28 U.S.C. § 2255 petition in the district court.  617 F.3d at 32.  Sotirion held that the government waived the procedural default argument and then reached the merits of the waiver of appeal argument.  Id. at 32-33.  As Torres-Estrada's attempted direct appeal here does not come to us on review of a § 2255 petition and the question of government waiver in Sotirion is distinct from what is before us, we decline to extend Sotirion's holding.

And so, Torres-Estrada is left with an argument that his assertions meet the "miscarriage of justice" exception to enforcement of waivers of appeal, as discussed in Teeter.  257 F.3d at 25-26 & n.9.  However, Torres-Estrada explicitly says that he "is not challenging his sentence or his guilty plea or the Rule 11 [of the Federal Rules of Criminal Procedure] inquiry at all," and that he "is not seeking to vacate his guilty plea."  Further, other than pointing to the DOJ policy and the district court's statements at sentencing -- arguments that we have just rejected -- Torres-Estrada develops no argument explaining how a "miscarriage of justice" would result from enforcing the waiver of appeal clause.

In any event, we cannot conclude that there would be a "miscarriage of justice" from enforcing the waiver of appeal clause

because even if we did not enforce the waiver of appeal clause, we would decline to hear Torres-Estrada's claims on direct appeal. The record underlying Torres-Estrada's arguments "is . . . not sufficiently developed to allow reasoned consideration of an ineffective assistance claim," and this is not the "rare case" where we will "review an ineffective assistance claim on direct appeal." United States v. LaPlante, 714 F.3d 641, 648 (1st Cir. 2013); see United States v. Santiago-Rivera, 805 F.3d 396, 398 (1st Cir. 2015) (explaining that "our general rule" is that IAC "claims must originally be presented to the district court as a collateral attack under 28 U.S.C. § 2255" (quoting United States v. Colón-Torres, 382 F.3d 76, 84 (1st Cir. 2004))); United States v. Mala, 7 F.3d 1058, 1063 (1st Cir. 1993) ("We have held with a regularity bordering on the monotonous that fact-specific claims of ineffective assistance cannot make their debut on direct review of criminal convictions, but, rather, must originally be presented to, and acted upon by, the trial court.").

B.   Recusal

Finally, we reject the argument that the district court judge erred when he denied Torres-Estrada's motion to recuse. Torres-Estrada argues that at least one communication[4] between the

---

[4]   Torres-Estrada refers to "conversations," while the government contends that there appeared to be only one "conversation."

district court and the attorney for a government witness "created an appearance of impropriety." He points to emails between a government witness and the witness's attorney that suggest that the attorney had at least one communication with the district court about the scheduling of a hearing in New York in a matter separate from Torres-Estrada's case.[5] Torres-Estrada filed a motion asking the district court to determine whether the emails created an appearance of partiality. The district court issued an order and opinion where it concluded that the emails did not create an appearance of partiality, and the district court declined to recuse itself.

Under 28 U.S.C. § 455(a), a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). "We review a ruling on a motion to recuse for abuse of discretion . . . ." United States v. Pulido, 566 F.3d 52, 62 (1st Cir. 2009). We "will sustain the district court's ruling 'unless we find that it cannot be defended as a rational conclusion supported by [a] reasonable reading of the record.'" Id. (alteration in original) (quoting United States v. Vázquez-Botet, 532 F.3d 37, 47 (1st Cir. 2008)). "Thus, an abuse of discretion will be found only if a reasonable

---

[5] We note that many of the facts relating to this claim are in sealed filings, so we cannot detail them further. We have reviewed these filings and considered them in reaching our decision.

- 9 -

reading of the record fails to support the conclusion that the judge's impartiality was not subject to question."  In re Bulger, 710 F.3d 42, 45 (1st Cir. 2013).

While "'in close cases doubts ordinarily ought to be resolved in favor of recusal[,]' . . . [t]his is not a close case." Pulido, 566 F.3d at 62 (quoting United States v. Snyder, 235 F.3d 42, 46 (1st Cir. 2000)).  Our review of the record leads us to conclude that any communication the district court had with the government witness's attorney did not call the district court's impartiality into question, and the district court did not abuse its discretion in deciding not to recuse itself.

## II.

We affirm the court's decision not to recuse itself and otherwise dismiss the appeal.